IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal No. RDB-10-0144 |
| TYRONE DALE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Tyrone Dale has been named in a multiple count Indictment (ECF No. 13), charging him with interference with interstate commerce by robbery, possession of a firearm by a prohibited person, and possession of a firearm in furtherance of a crime or violence, in violation of 18 U.S.C. § 1951, 18 U.S.C. § 922(g) and 18 U.S.C. § 924(c) respectively. The Superseding Indictment charges offenses relating to the November 22, 2009 robbery of a Food Lion grocery store in Salisbury, Maryland. This Court has already denied Defendant's Motion *In Limine* to Exclude Fingerprint Test Results (ECF No. 97) on the record. However, this Court will more fully set forth the basis for that decision in this Memorandum Opinion. For the reasons set forth on the record and the reasons that follow, that motion was DENIED.

BACKGROUND

The Superseding Indictment alleges that on November 22, 2009, two employees of the Food Lion grocery store in Salisbury Maryland were robbed by Defendant Dale at gunpoint. The Indictment alleges that the Defendant pointed a sawed-off shotgun at the two female clerks and demanded that they obtain money from the Food Lion safe. The two clerks loaded over

1

$1,800.00 in cash and coins in a white plastic bag, whereafter Defendant Dale ordered the two women to the floor and threatened to kill them if they alerted police.

During the course of the robbery, one of the clerks secretly triggered the store's silent alarm system. Dale is alleged to have fled on foot upon seeing police officers approach and, after a struggle with police, was taken into custody. Police officers recovered the shotgun, a white plastic bag containing $1844.10 in cash and coins, Dale's clothing, and a video tape recording of the robbery. Defendant's criminal record indicates three prior criminal convictions. Fingerprints were taken from Dale on each of these prior occasions and were again taken from Dale after being taken into custody in the instant case.

## ANALYSIS

Defendant moved to exclude the results of fingerprint testing from Defendant's prior criminal convictions as well as the fingerprint results from the arrest in the instant case. The Sixth Amendment to the United States Constitution provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In the case of *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause allows "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" the declarant. 541 U.S. 36, 59 (2004). However, the Court "left for another day" any effort to define "testimonial." *Id.* at 68. Subsequently, in the case of *Davis v. Washington*, the Court defined testimonial statements as those describing past events, such that a reasonable person would expect that his or her statements could be used in future criminal prosecutions. 547 U.S. 813, 822-23 (2006).

The Supreme Court expanded upon its Confrontation Clause jurisprudence in *Melendez-Diaz v. Massachusetts*, in which the Court held that a lab report indicating that a certain

substance was cocaine was inadmissible as a substitute for the live testimony of the report's analyst. 129 S. Ct. 2527 (2009). The Court concluded that "the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment" because the analysts could fairly assume that the forensic reports would later be used at trial as evidence. *Id.* at 2532. More recently, the Supreme Court examined the admissibility of a defendant's blood-alcohol level report and held that a qualified analyst was not a sufficient substitute for the live testimony of the person who conducted the actual test. *Bullcoming v. New Mexico*, No. 09-10876, 2011 WL 2472799 (June 23, 2011).

The Government was permitted to introduce a fingerprint card as part of its proof of a prior conviction of Mr. Dale to satisfy one of the elements of the Possession of a Firearm by a Prohibited Person charge (Count II) in the Superseding Indictment, pursuant to 18 U.S.C. § 922(g). The Defendant argued that the fingerprint records are "testimonial" in nature and are thus subject to the protections of the Confrontation Clause. In this case, there is nothing "testimonial" in nature about the fingerprint card itself and a fingerprint card does not fall within the ambit of *Melendez-Diaz* and *Bullcoming*. Both *Melendez-Diaz* and *Bullcoming* concern the introduction of forensic analysis reports in order to prove a certain fact at trial and therefore fall within the "core class of testimonial statements" envisioned by the Confrontation Clause. *Crawford*, 541 U.S. at 51-52. The recording of fingerprints is a routine internal police procedure and does not include any analysis as in the case of amount of narcotics or blood-alcohol level. Furthermore, the recording of fingerprints relates to the identification of individuals for security purposes and is not necessarily prepared for ultimate use at trial. Defendant's Confrontation Clause rights are thus not offended by the introduction of the fingerprint card. Accordingly,

Defendant's Motion *In Limine* to Exclude Fingerprint Test Results was DENIED for the reasons set forth on the record and those summarized in this memorandum opinion.

## CONCLUSION

For the reasons stated above and on the record in this case, Defendant's Motion *In Limine* to Exclude Fingerprint Test Results (ECF No. 97) was DENIED.

A separate order has been entered.

Dated: July 14, 2011

                                                  /s/_____
Richard D. Bennett
United States District Judge